EMPIRE STATE FINANCE CORPORATION, FINANCE EXPLORATION & DEVELOPMENT CORPORATION OF AMERICA, AND ALFRED C. COXE, JR., EDGAR L. KERSTETTER, WILLIAM R. JONES, AND JOHN W. DIXON, TRUSTEES OF EMPIRE STATE FINANCE CORPORATION, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6805.   Promulgated May 12, 1927.

*Lyle T. Alverson, Esq.,* for the petitioners.
*J. Harry Byrne, Esq.,* for the respondent.

STERNHAGEN: Deficiency of $3,958.11 income tax for 1921. The Commissioner refused to allow affiliation between the two petitioner corporations.

FINDINGS OF FACT.

The petitioner, the Empire State Finance Corporation, was during 1921 a Delaware corporation engaged in the business of financing automobile time paper, with its principal place of business in New York City. The corporation was dissolved in 1924. It had an authorized capital stock of 5,000 shares of preferred stock having a par value of $100 a share, and 5,000 shares of common stock of no par value. Both the common and the preferred stock had voting rights.

The petitioner, the Finance Exploration & Development Corporation of America, is and was during 1921 a holding company. It had a·capital stock of 5,000 shares of· common stock, with no preferred stock.

The petitioners, Alfred C. Coxe, Edgar L. Kerstetter, William R. Jones, and John W. Dixon, are the trustees of the petitioner, the Empire State Finance Corporation, dissolved.

The 5,000 shares of preferred stock of the Empire State Finance Corporation were owned during the taxable year involved by the Finance Exploration & Development Corporation. Of the 5,000 authorized shares of common stock of the Empire State Finance Corporation, 3,200 shares were also owned by the Finance Exploration & Development Corporation. A part or all of the remaining common stock was owned by W. H. Tucker, George Merryfield, and Charles T. Stuart.

Of the 5,000 shares of common stock of the Finance Exploration & Development Corporation, one William R. Jones owned 250 shares, one Burt Brown Barker owned 125 shares, and a partnership under the name of Jones & Baker owned 4,500 shares. The partnership of Jones & Baker consisted of William R. Jones, who owned a nine-tenths interest, and Jackson B. Sells, who owned a one-tenth interest.

Under date of April 1, 1920, a voting-trust agreement was entered into whereby all the stock of the Empire State Finance Corporation was deposited in trust with William R. Jones, Burt Brown Barker, and W. H. Tucker, as voting trustees. The provisions of the voting-trust agreement are in part as follows:

Title to the shares of stock of the Corporation, certificates for which shall be deposited hereunder with the Voting Trustees, or their said Agent, or shall be issued directly to the Voting Trustees by the Corporation as afore-said, shall be vested in the Voting Trustees and unless issued in their names as aforesaid may be transferred to the names of the Voting Trustees on the books of the Corporation but as holders of said stock, the Voting Trustees assume no liability as stockholders, their interest therein and hereunder being that of Trustees merely. At every election of directors, the Voting Trustees shall vote all stock held by them subject to this agreement in favor of the election of Wilson Hatch Tucker, George Edward Merryfield and Charles T. Stuart, and of each of them, as long as his contract of employment with the corporation shall continue, as Directors of the corporation, and in case of the death or incapacity of any or either of said individuals, or in case a vacancy or vacancies shall have been created by the termination of the contract of employment of any or either of said individuals with the corporation, the Voting Trustees shall vote in favor of the election of such person or persons to fill the vacancy or vacancies so created, as shall be designated by such of said three individuals as shall remain and continue to be directors, or either of them, or by the Finance Exploration & Development Corporation of America, if and according as such remaining directors, or either of them, or said Finance Exploration & Development Corporation of America shall have purchased the stock of the corporation, or Voting Trust Certificates representing the same, or any part thereof, of the individual or individuals by reason of whose death, incapacity or termination of employment, a vacancy or vacancies shall have been created. In case such stock or voting trust certificates representing the same, or any part thereof, shall have been acquired by said remaining directors

in unequal proportions, or if part thereof shall have been acquired by said remaining director or directors and part by the Finance Exploration & Development Corporation of America, the Voting Trustees shall vote in favor of the election of such person or persons to fill the vacancy or vacancies so created as shall be designated by the holder or holders of a plurality of the stock or Voting Trust Certificates representing the stock so acquired, at a meeting of such holders of such stock or Voting Trust Certificates. In case such stock or Voting Trust Certificates shall not have been acquired by any or either of said remaining directors, or by the Finance Exploration & Development Corporation of America, then the Voting Trustees shall elect such individual or individuals for said vacancy or vacancies as they may in their discretion desire. The Voting Trustees shall vote such stock in favor of the election of Wilson Hatch Tucker and George Edward Merryfield, as members of said Executive Committee, and in case of the death, resignation or incapacity of either of said members of the Executive Committee, they shall vote in favor of the election of Charles T. Stuart to fill the vacancy created by such death, resignation or incapacity, and they shall vote for said Charles T. Stuart as a member of the Executive Committee at each and every election of members of said Executive Committee thereafter until the termination of this agreement. In case at any time any or either of said Tucker, Merryfield and Stuart shall cease to be a member or members of the Board of Directors, he or they shall also, ipso facto, cease to be a member or members of the Executive Committee, and the Voting Trustees shall vote in favor of the election of such individual or individuals as shall have been elected to fill the vacancy or vacancies upon the Board of Directors, as a member or members of the Executive Committee, to fill the vacancy or vacancies therein so created. The Voting Trustees shall, in respect of all stock so held by them, possess and be entitled to exercise all stockholders' rights of every kind and character, including the right to vote such stock and to take part in or consent to any stockholders' action, to vote for, consent to or authorize at any time and from time to time, any amendment of the Certificate of Incorporation, except as therein provided, and/or the By-Laws of the Corporation, in any way deemed by them in their unrestricted discretion desirable, and do or perform any other act or thing which the stockholders of the Corporation are now or may hereafter be entitled to do or perform, provided that the Voting Trustees shall not, without the unanimous consent of such Voting Trustees, but with such unanimous consent they may, vote the shares of Common Stock so held by them in favor of, or consent to the doing by the Corporation of any or all of the acts or things specified in paragraph Fifth of the Certificate of Incorporation of the Corporation, and which the Corporation is prohibited from doing except with the unanimous consent of all of the holders of the Common Stock; or the doing by the Corporation of any or all of the acts or things specified in paragraph Sixth and subdivisions 1 and 2 of paragraph Eleventh of the Certificate of Incorporation of the Corporation, and which the Corporation is prohibited from doing except with the consent of the holders of 90 per cent of the shares of Preferred and Common Stock outstanding. The Voting Trustees, in respect of all stock so held by them, are entitled to receive dividends on said stock, and it is expressly understood and agreed that the holders of Voting Trust Certificates shall not have any right by or under said Voting Trust Certificates, or under this agreement, or any agreement expressed or implied, or otherwise, with respect to any such stock held by the Voting Trustees, to vote such stock, or to take part in, or consent to, any corporate or stockholders' action of the corporation, including the above, or to do or perform

any other act or thing which stockholders of the Corporation are now or may hereafter become entitled to do or perform.

The Voting Trustees shall not sell, pledge, hypothecate, mortgage or place any lien or charge upon the shares of stock subject hereto, except that they may deliver preferred stock to the Corporation upon receipt of the redemption price therefor as herein provided.

The registered holder of each Voting Trust Certificate shall be entitled, until distribution of stock in the Corporation as hereinafter provided for, to receive from time to time, payments equal to the dividends, if any, received by the Voting Trustees upon a like number of shares of stock of the Corporation as is specified in such Voting Trust Certificate and of the same class, whether declared in respect to income or principal and the registered holder of each Voting Trust Certificate representing preferred stock shall in addition be entitled to receive a sum equal to the redemption price of such preferred stock, or such part thereof as may be redeemed if said stock, or any part thereof, be redeemed during the continuance of this agreement as provided in the Certificate of Incorporation of the Corporation, upon surrender to the Voting Trustees, or their Agent, of his Voting Trust Certificate or Certificates representing such preferred stock to be redeemed, and, in the event of such redemption, the Voting Trustees shall deliver the preferred stock so redeemed to the Corporation upon receipt of the redemption price therefor.

In case the Voting Trustees shall receive any stock certificates of the Corporation issued by way of dividend upon stock held by them under this agreement, the said Voting Trustees shall hold such stock likewise subject to the terms of this agreement, and shall issue Voting Trust Cerificates representing such stock certificates to the respective registered holders of the then outstanding Voting Trust Certificates entitled to such dividends.

On April 1st, 1923, or upon the earlier termination of this agreement, as herein provided, the Voting Trustees shall distribute the stock of the Corporation held by them to the registered holders of the Voting Trust Certificates representing the same as follows, that is to say: They shall upon presentation and surrender, on and after said date or such earlier termination of this agreement, of Voting Trust Certificates accompanied by properly executed transfers thereof to the Voting Trustees if required by the Voting Trustees, and payment of any transfer taxes deliver certificates of stock of the Corporation (except to extent redeemed) for the shares specified in the Voting Trust Certificates so surrendered and of the same class.

In case on or after the termination of this agreement the Voting Trustees shall deposit with any trust company of the City of New York stock certificates so held by them, properly endorsed in blank for transfer, representing the number of shares of stock in the corporation called for by the Voting Trust Certificates outstanding and of the proper class or classes, with authority in writing to the Trust Company to deliver all said stock certificates in exchange for Voting Trust Certificates when and as surrendered for exchange as herein provided, then all further liability of the Voting Trustees or any of them for the delivery of stock certificates in exchange for Voting Trust Certificates or otherwise hereunder shall cease and determine.

All questions arising among the Voting Trustees shall be determined by a majority of them. The Voting Trustees may adopt their own rules of procedure and may, in all matters, act either at a meeting or by writing or otherwise with or without a meeting, and the decision or act of a majority of the Voting Trustees, or their proxies, shall, in all matters including the exercise of

the voting power, be deemed the decision and act of all of the Voting Trustees, except as hereinbefore provided. Any one or more of the Voting Trustees, may act as a director or an officer of the Corporation or of any corporation affiliated with the Corporation, and may vote for himself as such and may be interested in the stock of, or otherwise interested in, the Corporation or any such other corporation and may be the holder of or interested in Voting Trust Certificates issued hereunder.

Any Voting Trustee may at any time resign by mailing to the other Voting Trustees, or Trustee, or if there be no remaining Trustee, to the Corporation, his resignation in writing; and in every case of death, resignation or incapacity of a Voting Trustee, the vacancy so occurring shall be filled as follows: any successor to William R. Jones and/or Burt Brown Barker, and such successor's successor, and so on in the line of succession, shall be appointed by the Finance, Exploration and Development Corporation of America, or its successor. Any successor to Wilson Hatch Tucker, and such successor's successor, and so on in the line of succession, shall be appointed by a majority of the following individuals: Wilson Hatch Tucker, Charles T. Stuart and George Edward Merryfield, or their successors, as Directors of the Corporation to be appointed as hereinbefore provided. If any vacancy cannot be filled as above indicated, it shall be filled by the remaining Voting Trustees or Trustee. If the remaining Voting Trustees cannot agree within thirty days, as to a person to fill the vacancy, or there be no remaining Voting Trustee, the vacancy shall be filled by the Corporation.

Every successor trustee appointed in accordance with the foregoing provisions shall, from time of such appointment, be deemed a Voting Trustee hereunder, and shall have all the estate, title, rights and powers of a Voting Trustee hereunder, and all acts and instruments shall be done or executed which shall be necessary or reasonably requested for the purpose of effecting such succession and of making the Voting Trustees as they shall exist upon such appointment the owners of record of the stock delivered as aforesaid to the Voting Trustees. Until the appointment of a successor, as aforesaid, the surviving Voting Trustees shall have all the estate, title, rights and powers of the original Voting Trustees. The term "Voting Trustees" as used in this agreement, and in said Voting Trust Certificates shall apply to the parties of the second part and their successors at any time hereunder.

In voting upon said shares of stock or doing any act with respect to the control or management of the Corporaton or its affairs, or otherwise acting hereunder, as holders of the stock of the Corporaton, the Voting Trustees shall exercise their best judgment in the interests of the Corporaton, to the end that its affairs shall be properly managed, and its interests be properly promoted, but the Voting Trustees assume no responsibility in respect thereto or of any action taken by them or taken in pursuance of their consent thereto, or in pursuance of their vote so cast.

Each Voting Trustee may vote on said stock or take part in or consent to any corporate or stockholders' action or may do or perform any other act or thing hereunder or by virtue hereof, in person or by such person or persons as he shall at any time and from time to time select as his proxy or proxies. This power of acting in person or by proxy, however, shall not be construed to enable any Voting Trustee or his proxy to act otherwise than as in this agreement provided in conjunction with the other Voting Trustee or Trustees or his proxy or their proxies.

Any notice to be given to the holders of Voting Trust Certificates hereunder shall be sufficiently given if mailed to such of the registered holders of Voting

Trust Certificates as shall have furnished their addresses to the Voting Trustees or their Agent.

No Voting Trustee, as stockholder, Trustee or otherwise, shall be liable for any error of judgment or mistake of law or other mistake, or for any act or omission of any agent or attorney, or for anything save only his own individual willful misconduct. The compensation and expenses of the Voting Trustees shall be paid by the Corporation or the Stockholders.

This agreement may at any time before April 1st, 1923, be terminated by the unanimous vote of the Voting Trustees.

Certificates evidencing the deposit of shares of stock under this agreement were issued to the owners of the stock.

The fifth paragraph of the certificate of incorporation referred to in the voting trust agreement set forth above imposes certain restrictions on the declaration of dividends and on the retirement of preferred stock and sets forth that the voting power shall be vested in both classes of stock. The sixth paragraph relates to the declaration of dividends, to the distribution of assets upon liquidation or dissolution of the corporation, and further provides as follows:

The corporation shall not, except with the consent of the holders of ninety per cent of the shares of the Preferred and Common Stock outstanding, but may with such consent,

(1) Sell, lease or otherwise dispose of all of the assets and business of the corporation, or substantially all thereof, which it is essential or advisable for the corporation to retain in connection with the continuance of its regular business;

(2) Voluntarily dissolve, or liquidate, or consolidate or merge;

(3) Increase or decrease the number of Directors of the corporation, or of the members of the Executive Committee, or amend in any particular the provisions of subdivisions 1 and 2 of paragraph "Eleventh" of this Certificate of Incorporation.

Subdivisions 1 and 2 of paragraph 11 are as follows:

1. The Board of Directors shall consist of seven members. As hereinbefore provided, the number of Directors shall not be increased or decreased without the consent of the holders of ninety per cent (90%) of the number of shares of Preferred and Common Stock outstanding. Five Directors shall constitute a quorum, and all action by the Board of Directors must be by the affirmative vote of five members.

2. There shall be an Executive Committee composed of three Directors. The members of the Executive Committee shall be appointed by the Stockholders of the corporation at the annual meeting of said Stockholders. All action taken by the Executive Committee must be by the unanimous vote of all of the members hereof.

W. H. Tucker, George Merryfield and Charles T. Stuart, owners of a portion of the stock of the Empire State Finance Corporation, were employees of that company who had been given the privilege of purchasing stock for a nominal consideration. The funds necessary for the operation of that company were provided by the Finance Exploration & Development Corporation and the purpose of the

voting-trust agreement was to protect the interests of the Finance Exploration & Development Corporation.

Barker had known Jones for 23 years and had been his attorney for the major part of that time. He became one of the voting trustees at the solicitation of Jones and acquiesced in Jones' decisions. During the taxable year involved Jones had complete charge and management of both the Finance Exploration & Development Corporation and the Empire State Finance Corporation.

The Finance Exploration & Development Corporation and the Empire State Finance Corporation were affiliated during the year 1921.

> *Judgment will be entered on 15 days' notice, under Rule 50.*